**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| FITZGERALD FIELDS SR.,<br><br>                   Plaintiff,<br>        v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner, Social<br>Security Administration,<br><br>              Defendant.<br>_____ | No. EDCV 09-7177 CW<br><br>DECISION AND ORDER |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned magistrate judge.  Plaintiff seeks review of the denial of supplemental security income.  The court finds that judgment should be granted in favor of defendant, affirming the Commissioner's decision.

## I.   BACKGROUND

Plaintiff Fitzgerald Fields Sr. was born on April 15, 1964, and was forty-five years old at the time of his administrative hearing. [Administrative Record ("AR") 154.]  He has a high school education and past relevant work as a construction laborer.  [AR 39-40, 175.]

1

Plaintiff alleges disability on the basis of sleep apnea, problems with his knee and hip, and seizures.  [AR 169.]

## II.   PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on October 1, 2009, and filed on October 8, 2009.  On April 16, 2010, Defendant filed an answer and the Administrative Record.  On June 15, 2010, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

## III.   PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for supplemental security income on January 17, 2008, alleging disability since August 1, 2004.[1]  [AR 154.]  After the application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing, which was held on April 1, 2009, before Administrative Law Judge Robert A. Evans ("ALJ").  [AR 36-55, 61-65, 67-71.]  Plaintiff appeared with counsel and gave testimony. [AR 36-55.]  The ALJ denied benefits in a decision issued on June 19, 2009.  [AR 28-35.]  When the Appeals Council denied review on August 27, 2009, the ALJ's decision became the Commissioner's final decision. [AR 2-4.]

## IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of

---

[1]   Because Supplemental Security Income payments are not retroactive, the relevant time period for plaintiff's current application begins on plaintiff's protective filing date of January 31, 2008.  See 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.501.

2

legal error and supported by substantial evidence.  However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits.  See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id.  To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id.  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Osenbrock, 240 F.3d at 1162.

<h3 style="text-align:center">V.  <u>DISCUSSION</u></h3>

**A.  THE FIVE-STEP EVALUATION**

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months.  Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two: Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 416.920.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288.  If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[2], age,

_____

[2]  Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to

4

1    education, and work experience, a claimant can perform other work

2    which is available in significant numbers.  Tackett, 180 F.3d at 1099-

3    1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 416.920.

4         **B.  THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

5         Here, the ALJ found that Plaintiff had not engaged in substantial

6    gainful activity since January 31, 2008, the protective filing date of

7    Plaintiff's application (step one); that Plaintiff had the "severe"

8    impairments of seizure disorder vs. asystole and status post left knee

9    surgery (step two); and that Plaintiff did not have an impairment or

10   combination of impairments that met or equaled a "listing" (step

11   three).  [AR 30.]  The ALJ determined that Plaintiff had the RFC to

12   lift and carry fifty pounds occasionally and twenty-five pounds

13   frequently, stand/walk six hours in an eight-hour workday provided he

14   can sit every two hours as needed for alleged right hip or right knee

15   pain, and sit six hours in an eight-hour workday.  [Id.]  Plaintiff

16   was restricted from working at heights or near hazardous machinery.

17   [Id.]  Plaintiff was unable to perform his past relevant work (step

18   four).  [AR 33.]  Based on testimony from the vocational expert, the

19   ALJ determined that Plaintiff could perform certain jobs existing in

20   significant numbers in the national economy, including janitor (step

21   five).  [AR 33-34.]  Accordingly, Plaintiff was found not "disabled"

22   as defined by the Social Security Act.  [AR 34.]

23        **C.  ISSUES IN DISPUTE**

24        The parties' Joint Stipulation identifies the following disputed

25   issues:

26   _____

27   work without directly limiting strength, and include mental, sensory,
     postural, manipulative, and environmental limitations.  Penny v.

28   Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1156
     n.7; 20 C.F.R. § 404.969a(c).

1.   Whether the ALJ properly held that Plaintiff can perform the
     job of janitor;

2.   Whether the ALJ's finding that Plaintiff is limited to
     standing and/or walking for six hours out of an eight-hour
     workday provided he can sit for two hours as needed for
     right hip or right knee pain is consistent with the ALJ's
     finding that Plaintiff is capable of performing the
     exertional demands of medium work as a janitor;

3.   Whether the ALJ properly considered if Plaintiff meets or
     equals listing 11.02B[3]; and

4.   Whether the ALJ properly considered Plaintiff's testimony
     and made proper credibility findings.

[JS 2-3.]

**D.   ISSUES ONE AND TWO: STEP FIVE FINDING**

**Background**

Plaintiff alleges that he experienced episodes of seizures from 2004-2008.  [AR 41.]  According to Plaintiff, in 2004, Dr. Richard Kay, a treating internist, diagnosed Plaintiff with a seizure disorder and prescribed seizure medication.  [Id.]

On April 2, 2008, Dr. Barry Gordon Gwartz, a consultative examiner, concluded that Plaintiff was capable of lifting and/or carrying fifty pounds occasionally and twenty-five pounds frequently, standing and/or walking for six hours out of an eight-hour workday provided he can sit every two hours as needed, and sit for six hours out of an eight-hour workday.  [AR 254-59.]  Dr. Gwartz imposed no

---

[3]   The parties incorrectly state in the Joint Stipulation that the issue is whether Plaintiff meets or equals listing 13.10. [JS 3.] Listing 13.10 concerns breast cancer, not one of the impairments at issue here.  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 13.10.

1    other limitations except to preclude Plaintiff from working at heights

2    or near hazardous machinery "because of his history of alleged seizure

3    disorder." [AR 259.] Dr. Gwartz did not diagnose Plaintiff with a

4    seizure disorder. Rather, he noted that Plaintiff had a normal

5    neurological examination, but that Plaintiff reported a history of

6    nighttime seizure disorder. [AR 258.] Dr. Elliot L. Gilpeer, a State

7    Agency review physician, agreed with Dr. Gwartz's exertional

8    limitations. [AR 263.]

9        In November 2008, Plaintiff checked into USC University Hospital

10   ("USC") for an epilepsy study. [AR 50-51, 365-67.] While monitoring

11   Plaintiff, USC doctors learned that Plaintiff was actually

12   experiencing periods of syncope[4] and asystole[5] and recommended a

13   pacemaker. [AR 368-70.] Dr. Laura Ann Kalayjian, a treating

14   neurologist at USC, verified that Plaintiff was not experiencing

15   seizures. [AR 298.] On November 13, 2008, doctors implanted a

16   pacemaker in Plaintiff. [AR 353-54.] On November 14, 2008, Dr.

17   Kalayjian wrote that Plaintiff was likely misdiagnosed with a seizure

18   disorder. [AR 314.] Dr. Kalayjian explained that Plaintiff had

19   syncope, which caused the loss of consciousness. [Id.] Dr. Kalayjian

20   explained that due to the implantation of a pacemaker, Plaintiff

21   should no longer experience any syncopal episodes. [Id.] Dr.

22   Kalayjian discontinued Plaintiff's seizure medications. [Id.]

23

24   ───────────────

25       [4] Syncope is the temporary partial or complete loss
     consciousness with interruption of awareness of oneself and one's
26   surroundings. Syncope can be caused by heart problems. See
     http://www.medterms.com/script/main/art.asp?articlekey=5612.

27       [5] Asystole is defined as cardiac standstill or arrest; absence
     of heartbeat. See
28   http://medical-dictionary.thefreedictionary.com/asystole.

Plaintiff stopped experiencing seizures or episodes when he lost consciousness, whether synocopal or seizure-related, after the procedure and was informed the previous seizure diagnosis was incorrect.  [AR 51, 458.]

At the April 1, 2009, administrative hearing, the ALJ asked the vocational expert whether a person with Plaintiff's limitations, including the need to sit every two hours and preclusion from working around heights and around dangerous machinery, could perform any range of medium exertion jobs in the national economy.  [AR 53-54.]  The vocational expert responded that the person could perform the job of a janitor (Dictionary of Occupational Titles ("DOT") code 381.687-018). [AR 54.]  The ALJ adopted the vocational expert's testimony to find that Plaintiff was not disabled.  [AR 33-34.]

### Plaintiff's Claim

Plaintiff argues that the ALJ erred in finding that he can perform the job of janitor because the job is inconsistent with his RFC.  [JS 3-6, 11-13.]  First, Plaintiff asserts that the job of janitor would require him to work around hazardous machinery.  [AR 3-6.]  Second, Plaintiff argues that the job of janitor would require him to stand or walk "for a total of approximately [six] hours in an [eight]-hour workday," which does not meet the requirement that he can sit every two hours as needed.  [AR 11-13.]  Accordingly, Plaintiff argues that the ALJ's decision at step five was based on reversible error.  [AR 6, 13.]

Because these arguments both concern the step five analysis and inconsistency with Plaintiff's RFC, the Court will address them together.

8

1

### Discussion

2     At step five of the sequential evaluation, the burden of proof

3 shifts to the Commissioner to identify specific jobs existing in

4 substantial numbers in the national economy that claimant can perform

5 despite his identified limitations.  <u>Johnson v. Shalala</u>, 60 F.3d 1428,

6 1432 (9th Cir. 1995).  One method of demonstrating the existence of

7 these jobs is through the testimony of a vocational expert, who can

8 assess the effect of any limitation on the range of work at issue,

9 identify jobs which are within the RFC, if they exist, and provide a

10 statement of the incidence of such jobs in the region where the

11 claimant lives or in several regions of the country.  Social Security

12 Ruling ("SSR") 83-12, 1983 WL 31253 at *3.

13     Pursuant to SSR 00-4p, 2000 WL 1898704 at *4, when a vocational

14 expert provides evidence about the requirements of a job or

15 occupation, the ALJ has "an affirmative responsibility to ask about

16 any possible conflict" between that testimony and the Dictionary of

17 Occupational Titles ("DOT") and to obtain a reasonable explanation for

18 any conflict.  In light of the requirements of SSR 00-4p, the Ninth

19 Circuit has held that an ALJ may not rely on a vocational expert's

20 testimony without first inquiring whether the testimony conflicts with

21 the DOT.  <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1152-53 (9th Cir. 2007).

22 The failure to expressly follow this procedural error can be harmless

23 when there is no conflict or if the vocational expert "provided

24 sufficient support for her conclusion."  <u>Id.</u> at 1154, n.19; <u>Burch v.</u>

25 <u>Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ

26 will not be reversed for errors that are harmless.").

27     The Court finds that the ALJ committed a procedural error when he

28 failed to expressly ask the vocational expert if her testimony was

9

1  consistent with the DOT[6], but that the error is harmless for multiple
2  reasons.

3      First, there is sufficient support for the vocational expert's
4  conclusion.  See Massachi, 486 F.3d at 1154, n.19.  The ALJ expressly
5  incorporated both restrictions – the need to sit every two hours and
6  preclusion from working around heights and hazardous machinery – in
7  his hypothetical to the vocational expert.  [AR 53-54.]  The
8  vocational expert responded to the ALJ's hypothetical and determined
9  that in spite of those limitations, there were medium work[7] jobs that
10 Plaintiff could perform.  [AR 54.]  In addition, the vocational expert
11 expressly explained that a janitor would be given a ten to fifteen-
12 minute break every two hours.  [Id.]

13     Second, the ALJ's actions amount to harmless error because there
14 is no conflict between the vocational expert's testimony and the DOT
15 description.  Massachi, 486 F.3d at 1154, n.19 (stating that the
16 failure to ask if there is a conflict can be harmless when there is no
17 conflict).  A DOT description lists duties that may be required of a
18 janitor but this does not mean that every listed duty is mandatory to
19 the position.  See Johnson, 60 F.3d at 1435 (stating that the DOT
20 "provides only occupational information on jobs as they have been
21 found to occur, but they do not coincide in every respect with the
22 contents of jobs as performed in particular establishments or at

23

24     [6]  In the decision, the ALJ wrote that the testimony of the
   vocational expert was consistent with the information contained in the
25 DOT.  [AR 34.]  The ALJ, however, did not actually ask the vocational
   expert whether her testimony conflicted with the DOT.  [AR 53-55.]
26

27     [7]  Medium work involves lifting no more than 50 pounds at a time
   with frequent lifting or carrying of objects weighing up to 25 pounds.
28 If someone can do medium work, we determine that he or she can also do
   sedentary and light work.  20 C.F.R. § 416.967(c).

certain localities") (citation omitted).  While some janitors may work with incinerators, lawnmowers, handtrucks, or industrial trucks, others do not.[8]  Thus, the ALJ's finding and the vocational expert's testimony do not deviate from the DOT job description or conflict with Plaintiff's RFC.

Third, Plaintiff's RFC was based upon a misdiagnosis.  [AR 51, 314.]  When the consultative examiner and State Agency review physician offered their opinions as to Plaintiff's RFC, they restricted him from working at heights or near hazardous machinery due to his "history of alleged seizure disorder."  [AR 259.]  Neither the consultative examiner nor State Agency review physician diagnosed Plaintiff with a seizure disorder or verified the diagnosis with Plaintiff's medical records, but rather relied on Plaintiff's own reporting.  [AR 258.]  Given the subsequent discovery that Plaintiff was incorrectly diagnosed with a seizure disorder and no longer suffers from any syncopal episodes, the limitations restricting him from working around heights and dangerous machinery are inappropriate and should not have been included in the RFC.  Substantial evidence supports the finding that there is no medical basis for including these limitations in any future RFC determination.  [AR 458.]

Finally, even if the job of janitor conflicted with Plaintiff's RFC limitations, there are other jobs that he can perform.  The ALJ concluded that Plaintiff can perform medium work, which includes light and sedentary work.  [AR 30.]  20 C.F.R. § 416.967(c).  Sedentary work

---

[8]   Even if Plaintiff had to transport items with a handtruck or industrial truck as listed in the DOT description, Plaintiff was able to operate both safely.  On November 14, 2008, Plaintiff's treating physician reported to the Department of Motor Vehicles that Plaintiff's condition, syncope, would not affect Plaintiff's ability to engage in safe driving.  [AR 311.]

involves sitting and requires only occasional walking and standing. 20 C.F.R. § 416.967(a).  There are few unskilled sedentary jobs which require work around hazardous machinery.  SSR 96-9p, 1996 WL 374185 at *9.  Sedentary work should accommodate Plaintiff's limitations.

Accordingly, the ALJ did not commit reversible error when he failed to expressly ask the vocational expert as to whether her testimony conflicted with the DOT description.

**E.   ISSUE THREE: STEP THREE FINDING**

At step three of the sequential evaluation, plaintiff has the burden to show that his impairment, or combination of impairments, meets or equals a listing.  <u>Lester</u>, 81 F.3d at 828, n.5; <u>Tackett</u>, 180 F.3d at 1098.  In order to <u>meet</u> a listing, the impairment must meet all of the specified medical criteria in the listing.  <u>Tackett</u>, 180 F.3d at 1099.  In order to <u>equal</u> a listing, a plaintiff must establish "symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." <u>Id.</u> (<u>quoting</u> 20 C.F.R. § 404.1526).

Plaintiff argues that the ALJ failed to properly consider whether he met or equaled listing 11.02B.  [JS 15-18.]  Listing 11.02B provides, in relevant part:

Epilepsy - convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month, in spite of at least 3 months of prescribed treatment.  With:

12

1         B.  Nocturnal episodes manifesting residuals which interfere

2              significantly with activity during the day.

3  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.02.

4      The ALJ properly found that Plaintiff did not meet or equal

5  listing 11.02B.  As the ALJ discussed, the record does not adequately

6  support Plaintiff's contention that he has a seizure disorder.  [AR

7  32.]  Although prior to 2008, Plaintiff was diagnosed with a seizure

8  disorder, Plaintiff was informed in November 2008 that he had been

9  previously misdiagnosed and actually suffered from asystole and

10  syncope.  [AR 32, 51, 314.]  After surgery to implant a pacemaker in

11  Plaintiff, doctors discontinued Plaintiff's anti-seizure medication.

12  [AR 314.]  On February 4, 2009, Plaintiff reported to his doctor

13  during a routine followup of his pacemaker that he had no further

14  syncopal episodes.  [AR 458.]  Despite Plaintiff's acknowledgment of

15  his misdiagnosis during the hearing, he fails to mention it in his

16  argument.  [AR 51.]

17      Even if Plaintiff did have a seizure disorder, the ALJ adequately

18  explained in his decision why Plaintiff did not meet or equal a

19  listing.  The listing requires a "detailed description of a typical

20  seizure pattern" by a reporting physician or testimony of persons

21  other than the claimant.  20 C.F.R. Part 404, Subpart P, Appendix 1,

22  Listing 11.00A.  The ALJ noted that the record is bereft of any such

23  description as it contains no records of doctor's visits, emergency

24  room visits or hospitalization documenting the alleged seizure

25  activity.  [AR 32.]  Dr. Kay, the doctor who diagnosed Plaintiff with

26  a seizure disorder, simply indicates in his treatment notes that

27  Plaintiff has a seizure disorder.  [AR 231-48.]  Plaintiff alleges

28  that his wife and others have witnessed these seizures but none have

1  provided any testimony or statements as required when no physician has

2  provided a description of the seizure activity.  [AR 179.]   Indeed,

3  the doctors at USC who were studying Plaintiff for an epilepsy study

4  concluded that he had syncope and not a seizure disorder.  [AR 32,

5  314.]  Moreover, the listing also requires that an individual

6  "follow[] prescribed antiepileptic treatment."  20 C.F.R. Part 404,

7  Subpart P, Appendix 1, Listing 11.00A.  The ALJ noted that Plaintiff

8  was not fully compliant with his treatment plan.  [AR 33, 228-30.]

9  Accordingly, the ALJ correctly concluded that Plaintiff's impairment

10  did not meet Listing 11.02B.

11       The ALJ also correctly found that Plaintiff's impairment, or

12  combination of impairments, did not equal listing 11.02B.  Plaintiff

13  cites his Seizure Questionnaire, where he describes his seizures, as

14  an example of how he meets or equals listing 11.02B. [AR 177-179.]

15  Plaintiff, however, fails to even mention his subsequent diagnosis of

16  syncope, treatment for syncope, and the lack of further episodes of

17  syncope after treatment.  Unless Plaintiff presents evidence of an

18  equivalence or offers a theory which includes discussion of the

19  subsequent diagnosis and lack of symptoms, the ALJ was not required to

20  explain his finding and discuss the combined effects of the

21  impairments.  See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001)

22  (rejecting claimant's argument that the ALJ failed to adequately

23  explain his finding that his impairments did not equal a listing

24  because claimant failed to offer a theory as to how the impairments

25  equaled a listing).  As such, Plaintiff failed to satisfy listing

26  11.02B and no remand is required.

27

28

14

**F.   ISSUE FOUR:   CREDIBILITY**

During the hearing, Plaintiff testified that his seizures prevented him from working.  [AR 41.]  Plaintiff testified that he took anti-seizure medication from 2004 through 2008.  [<u>Id.</u>]  Plaintiff explained that in November 2008, doctors at USC who were monitoring him told him that he was not having any seizures but rather had congestive heart failure and required a pacemaker.  [<u>Id.</u>]  Plaintiff testified that the doctors explained to him that he was misdiagnosed with seizures.  [AR 51.]

The ALJ found that Plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent that they are inconsistent with" his RFC.  [AR 33.]  With regard to Plaintiff's knee and hip problems, the ALJ determined that there was no evidence of disuse muscle trophy that would be compatible with Plaintiff's alleged level of inactivity.  [<u>Id.</u>]  As for Plaintiff's complaint and limitations regarding his seizures, the ALJ concluded that they were inconsistent with the treatment he received.  [<u>Id.</u>]  The record contained no evidence of doctor's visits, emergency room visits, or hospitalizations for seizures.  [<u>Id.</u>]  Further, contrary to Plaintiff's contentions, the record showed that Plaintiff was not fully compliant with his medication protocol.  [<u>Id.</u>]  The ALJ also noted that Plaintiff takes care of his two children and disabled wife.  [<u>Id.</u>]  Plaintiff asserts that the ALJ did not provide clear and convincing reasons for discrediting his testimony and "failed to specifically explain which parts of [his] statements" were credible and which were not.  [JS 21-25.]

15

1    Questions of credibility and resolution of conflicts in the

2  testimony are functions solely for the ALJ.  Parra v. Astrue, 481 F.3d

3  742, 750 (9th Cir. 2007) (citing Sample v. Schweiker, 694 F.2d 639,

4  642 (9th Cir. 1982)).  To determine whether a claimant's subjective

5  symptom testimony is credible, the ALJ must engage in a two-step

6  analysis.  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir.

7  2007).  First, the ALJ must determine whether the claimant has

8  presented objective medical evidence of an underlying impairment

9  "'which could reasonably be expected to produce the pain or other

10  symptoms alleged.'"  Id. at 1036 (quoting Bunnell v. Sullivan, 947

11  F.2d 341, 344 (9th Cir. 1991)).  Second, if the claimant meets this

12  first test, and there is no evidence of malingering, "the ALJ can

13  reject the claimant's testimony about the severity of her symptoms

14  only by offering specific, clear and convincing reasons for doing so."

15  Id. (quoting Smolen, 80 F.3d at 1281); see also Parra, 481 F.3d at

16  750; Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  An

17  ALJ must "specifically identify" the testimony found not credible, the

18  ALJ must explain what evidence undermines the testimony, and the

19  evidence on which the ALJ relies must be "substantial."  Parra, 481

20  F.3d at 750; Tonapetyan, 242 F.3d at 1148 ("The ALJ must give

21  specific, convincing reasons for rejecting the claimant's subjective

22  statements.");  Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

23  1997).

24    Plaintiff's contention that the ALJ failed to specify which parts

25  of his testimony were not credible and provide clear and convincing

26  reasons for rejecting them is without merit.  Although the ALJ did not

27  expressly specify at the outset of each paragraph which reason applied

28

1   to which impairment and its symptoms, it is clear from the decision to
2   which he is referring.

3       Contrary to Plaintiff's argument, a review of the record
4   indicates that the ALJ provided clear and convincing reasons under the
5   Ninth Circuit standard.  An ALJ "may rely on ordinary techniques of
6   credibility evaluation," including a plaintiff's reputation for
7   truthfulness and inconsistencies between a plaintiff's testimony and
8   conduct.  See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir.
9   2008); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).
10  First, the ALJ noted that the objective medical evidence did not
11  support Plaintiff's alleged symptoms.  [AR 31.]  Although the lack of
12  objective medicine cannot be the sole basis for rejecting a
13  plaintiff's credibility, "it is a factor that the ALJ can consider in
14  his credibility analysis."  Burch, 400 F.3d at 681.  Here, in addition
15  to the lack of objective medical evidence, the ALJ noted additional
16  reasons for finding Plaintiff less than credible.  First, the ALJ
17  noted that the level of care for Plaintiff's seizures was inconsistent
18  with Plaintiff's complaints.  [AR 33.]  Plaintiff alleged that he had
19  seven to eight seizures a month, where he would foam at the mouth,
20  urinate on himself, have spasms, stiffen up, and become nauseous and
21  lightheaded.  [AR 44-46.]  Yet, Plaintiff never sought treatment any
22  sort of emergency treatment.  [AR 33.]  His medical records show that
23  he made only about fourteen visits to his doctor over a four-year
24  period and these visits were not directly seizure-related.  [AR 33,
25  231-48.]  Rather, Plaintiff primarily visited Dr. Kay to have
26  "paperwork" filled out.  [AR 231-48.]  See Burch, 400 F.3d at 681
27  (stating that the "ALJ is permitted to consider lack of treatment in
28  his credibility determination").  Second, contrary to Plaintiff's

17

contention that he takes his medication as prescribed, the record shows that Plaintiff is not always fully compliant.  [AR 33, 45, 228-30.]  See Montalvo v. Astrue, 237 Fed. Appx. 259, 262 (9th Cir. 2007) (finding that plaintiff's failure to comply with certain aspects of her treatment plan was a clear and convincing reason to reject her testimony); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (noting that the failure to follow a prescribed treatment plan without good reason can cast doubt on credibility).  The ALJ reasonably concluded that if Plaintiff's symptoms were as alleged, both he would have required more aggressive treatment and been more compliant with his medication.  See Parra, 481 F.3d at 751 (noting that conservative treatment is a clear and convincing reason for finding a plaintiff not credible).

Accordingly, this issue is without merit.

### V.  ORDERS

Accordingly, **IT IS ORDERED** that:

1.    The decision of the Commissioner is **AFFIRMED**.

2.    This action is **DISMISSED WITH PREJUDICE**.

3.    The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.


DATED: October 4, 2010

_____
                       CARLA M. WOEHRLE
                  United States Magistrate Judge

18